FRANK FALZETTA, Cal. Bar No. 125146
SCOTT SVESLOSKY, Cal. Bar No. 217660
BRENDA A. BISSETT, Cal. Bar No. 116642
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:  213.620.1398
Email:       ffalzetta@sheppardmullin.com
             ssveslosky@sheppardmullin.com
             bbissett@sheppardmullin.com

Attorneys for Plaintiffs
THE OHIO CASUALTY INSURANCE
COMPANY, WEST AMERICAN
INSURANCE COMPANY, THE FIRST
LIBERTY INSURANCE
CORPORATION, AMERICAN FIRE
AND CASUALTY COMPANY, and
LIBERTY INSURANCE
CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY, a New Hampshire corporation; WEST AMERICAN INSURANCE COMPANY, an Indiana corporation; THE FIRST LIBERTY INSURANCE CORPORATION, an Illinois corporation; AMERICAN FIRE AND CASUALTY COMPANY, a New Hampshire corporation; and LIBERTY INSURANCE CORPORATION, an Illinois corporation, <br><br> Plaintiffs, <br><br> v. <br><br> LULAROE, LLC, a California Limited Liability Company; LLR, Inc., a Wyoming Corporation; LENNON LEASING, LLC, a Wyoming Corporation; MARK STIDHAM, an individual; DEANNE BRADY A/K/A DEANNE STIDHAM, an individual, JORDAN BRADY, an individual, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

-1-

1    Plaintiffs, The Ohio Casualty Insurance Company, West American Insurance
2    Company, The First Liberty Insurance Corporation, American Fire and Casualty
3    Company, and Liberty Insurance Corporation (collectively "Plaintiffs",) complain
4    against defendants, LuLaRoe LLC, LLR, Inc., Lennon Leasing, LLC, Mark
5    Stidham, Deanne Brady a/k/a Deanne Stidham, and Jordan Brady (collectively,
6    "Defendants"), and allege as follows:

7

8                                    **JURISDICTION**

9        1.    This Court has jurisdiction over this action based upon complete
10   diversity of citizenship under 28 U.S.C. section 1332.  The amount in controversy,
11   exclusive of interest and costs, exceeds $75,000.

12       2.    Plaintiff The Ohio Casualty Insurance Company is a New Hampshire
13   corporation, with its principal place of business in the State of Massachusetts, and,
14   at all relevant times, was qualified to do business in California.

15       3.    Plaintiff West American Insurance Company is an Indiana corporation,
16   with its principal place of business in the State of Massachusetts, and, at all relevant
17   times, was qualified to do business in California.

18       4.    The First Liberty Insurance Corporation is an Illinois corporation, with
19   its principal place of business in the State of Massachusetts, and, at all relevant
20   times, was qualified to do business in California.

21       5.    American Fire and Casualty Company is a New Hampshire
22   corporation, with its principal place of business in the State of Massachusetts, and,
23   at all relevant times, was qualified to do business in California.

24       6.    Liberty Insurance Corporation is an Illinois corporation, with its
25   principal place of business in the State of Massachusetts, and, at all relevant times,
26   was qualified to do business in California.

27       7.    Defendant LuLaRoe, LLC is a California limited liability company
28   with its principal place of business in Riverside County, California.

8.      Defendant LLR, Inc. is a Wyoming corporation with its principal place of business in Riverside County, California.

9.      Defendant Lennon Leasing, LLC is a Wyoming limited liability company with its principal place of business in Riverside County, California.

10.     Mark Stidham is an individual residing in the State of California in or around Corona, California in Riverside County.

11.     Deanne Brady a/k/a Deanne Stidham is an individual residing in the State of California in or around Corona, California in Riverside County.

12.     Jordan Brady is an individual residing in the State of California in or around Corona, California in Riverside County.

## VENUE

13.     Venue is proper in this district, pursuant to 28 U.S.C. section 1391(b), because at least one defendant resides in this judicial district, it is the judicial district in which a substantial part of the events giving rise to the claim have occurred, and it is the district where Plaintiffs issued the insurance policies that are the subject of this declaratory judgment action.

## GENERAL ALLEGATIONS

***The Stella Lemberg et al. v. LuLaRoe et al. Class Action***

14.     On January 12, 2018, plaintiffs, Stella Lemberg, Jeni Laurence, Amanda Blunder, Carissa Stuckart, Dana Apana, Karen Moss Brown, Shannon Carrillo, Samantha Hall, Natalie Lien, Melissa Atkinson, Aki Berry, Cheryl Hayton, Tiffany Scheffer, Lora Haskett, Ashley Healy, Jocelyn Burke-Craig, Brittany Bianchi, Kerry Tighe-Schwegler, Jini Patton, Laura Rocke, Stephenie McGurn, and Peggry Johnson, filed a First Amended Class Action Complaint in the United States District Court for the Central District of California, Case No. 5:17-cv-02102 (the "Lemberg Class Action").  Attached as **Exhibit A** is a true and correct copy of the

First Amended Complaint filed in the Lemberg Class Action (the "Lemberg Underlying Complaint").  The Lemberg Class Action was stayed and referred to arbitration (the "Lemberg Arbitrations").

15.     In the Lemberg Underlying Complaint, the plaintiffs allege, on behalf of themselves and a proposed class of all others similarly situated, that defendants, LuLaRoe, LLC, LLR, Inc., Mark Stidham, and Deanne Brady a/k/a Deanne Stidham, perpetrated an unlawful and fraudulent pyramid scheme.  The Lemberg plaintiffs allege that LuLaRoe markets and sells clothing to a nationwide network of individuals, known as "Consultants," who then attempt to sell the products to end users.  They contend that, in a pyramid scheme, participants pay money into the enterprise for the right to receive compensation from the enterprise running the scheme, which is primarily based on bringing new participants into the scheme.  The Lemberg plaintiffs allege that they were at the losing end of the pyramid structure and that defendants also failed to honor numerous promises to refund the Consultants for their inventory expenditures.  This has left the Consultants "in grave financial situations."  The Lemberg plaintiffs have asserted a number of claims for relief, including Violation of California Unfair Competition and Unfair Advertising laws, Unjust Enrichment, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Conversion, violations of California's Seller Assisted Marketing Plan Act, and violations of California's penal and civil code.

16.     LuLaRoe, LLC, LLR, Inc., Mark Stidham, and Deanne Brady a/k/a Deanne Stidham have demanded that Plaintiffs defend and indemnify them in the Lemberg Class Action and Lemberg Arbitrations, and reimburse them for defense fees and costs incurred, pursuant to some or all of the insurance policies that Plaintiffs issued to LuLaRoe, Inc., LuLaRoe, LLC, and/or LLR, Inc., described in paragraphs 30 through 33 below  (collectively, the "Policies").

1    *The Providence Industries, LLC v. LuLaRoe LLC et al. Lawsuit*

2        17.    On July 16, 2019, Providence Industries LLC filed a Second Amended

3    Complaint against LuLaRoe, LLC, LLR, Inc., Mark Stidham, Deanne Brady a/ka/

4    Deanne Stidham, and twenty-four limited liability companies allegedly affiliated

5    with Defendants, in California Superior Court for the County of Riverside, Case No.

6    RIC1825263 (the "Providence Action").  Attached as **Exhibit B** is a true and correct

7    copy of the Second Amended Complaint filed in the Providence Action (the

8    "Providence Underlying Complaint").

9        18.    In the Providence Underlying Complaint, plaintiff alleges that it and

10   LLR, Inc., and LuLaRoe, LLC are parties to a Sourcing Agreement, under which

11   LLR, Inc. agreed to purchase Products and pursuant to which LuLaRoe, LLC

12   guaranteed LLR, Inc.'s obligations.  Plaintiff alleges "multiple breaches of contract

13   under the Sourcing Agreement, and multiple Events of Default."  Plaintiff also

14   alleges that Obligors are "either unable or unwilling to pay their debts as they

15   become due," and that their "principals and owners (directly and indirectly), Mr.

16   Stidham and Ms. Stidham, have acted in an improper manner to divert funds from

17   Obligors to themselves, directly or indirectly."  Plaintiff alleges that defendants have

18   created shell entities to defraud creditors.  Plaintiff further alleges that it destroyed

19   approximately $5 million in product pursuant to LLR, Inc.'s instructions.  Plaintiff

20   has asserted seven causes of action for Breach of Contract, Breach of Guaranty,

21   Goods Sold and Delivered, Open Book Account, Fraud, Avoidance of Fraudulent

22   Transfer (actual intent), and Avoidance of Fraudulent Transfers (constructive

23   intent).

24       19.    LuLaRoe, LLC, LLR, Inc., Mark Stidham, and Deanne Brady a/k/a

25   Deanne Stidham have demanded that Plaintiffs defend and indemnify them in the

26   Providence Action, and reimburse them for defense fees and costs incurred,

27   pursuant to some or all of the Policies.

28

*The Belinda Hibbard et al. v. LuLaRoe et al. Lawsuit*

20.     On November 27, 2019, Belinda Hibbard and over 150 other individual plaintiffs filed a Complaint against LuLaRoe, LLC, LLR, Inc., LLR LuLaRoe, Inc.[1] and Lennon Leasing, LLC in California Superior Court for the County of Sacramento, Case No. 34-2019-00270087 (the "Hibbard Action").  Attached as **Exhibit C** is a true and correct copy of the Complaint, without Attachment 2, filed in the Hibbard Action (the "Hibbard Underlying Complaint").

21.     In the Hibbard Underling Complaint, plaintiffs allege that from, "2013 until July 1, 2017, Defendants . . . engaged in a criminally and civilly unlawful enterprise. . . ," which they describe as an "endless chain" and "pyramid scheme." Plaintiffs complain that they lost money as independent fashion consultants through their investments in LuLaRoe brand clothing and expenses.  They allege "wrongful taking of their initial payment, wrongful refusal and/or delay in honoring buy-back requests, and business expenses and losses."  Plaintiffs also complain that they purchased inventory from defendants that they were not able to sell or return, plaintiffs sent poor quality inventory, and that plaintiffs refused to honor refund requests.  Plaintiffs assert a number of causes of action, including Endless Chain Scheme, Violation of Unfair Competition and False Advertising Laws, Unlawful Seller Assisted Marketing Plan, Breach of Contract, and Negligent Interference with Prospective Economic Damages.

22.     LuLaRoe, LLC and LLR, Inc. have demanded that Plaintiffs defend and indemnify them in the Hibbard Action, and reimburse them for defense fees and costs incurred, pursuant to some or all of the Policies.

---

[1] LLR LuLaRoe, Inc. is the name under which LLR, Inc. is registered to do business in California.

*The Tabitha Sperring et al. v. LLR, Inc. Class Action*

23.     On April 3, 2019, plaintiffs, Tabitha Sperring, Paislie Merchant, and Sally Poston, filed a First Amended Class Action Complaint in the United States District Court for the Central District of California, Case No. 5:19-cv-433 (the "Sperring Class Action").  Attached as **Exhibit D** is a true and correct copy of the First Amended Complaint filed in the Sperring Class Action (the "Sperring Underlying Complaint").

24.     In the Sperring Underlying Complaint, the plaintiffs allege, on behalf of themselves and a proposed class of all others similarly situated, that defendants LuLaRoe, LLC, LLR, Inc., Lennon Leasing, LLC, Mark Stidham, and Deanne Brady a/k/a Deanne Stidham, perpetrated an unlawful and fraudulent pyramid scheme.  They allege that defendants recruit stay-at-home mothers to become "consultants," who believe that they will be able to sell LuLaRoe clothing items to a retail market.  However, plaintiffs contend that the consultants' primary income is derived from their ability to recruit other participants "into the LuLaRoe scheme," rather than the sales of products.  Plaintiffs further claim that to incentivize them to continue buying large amounts of LuLaRoe merchandise, defendants represented to consultants that, as long as they bought more LuLaRoe products, they would sell more LuLaRoe products, and that there was nothing to lose, because LuLaRoe would honor a full 100% return policy all the while omitting that the LuLaRoe quality of product was declining, the market was saturated, and providing misleading income statements and retailer maps.  Plaintiffs assert a number of claims for relief, including; violation of Penal Code § 327 and Civil Code § 1689.2, violation of the Unfair Competition Law ("UCL"), violation of the Seller Assisted Marketing Plan Act, violations of Business & Professions Code section 17500, et seq., Breach of Contract, violation of Corporations Code, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. 1962(a)(c)(d).

25.     On May 6, 2019, defendants in the Sperring Class Action filed a filed a Motion to Compel Plaintiffs to Individually Arbitrate and to Dismiss or Stay the Lawsuit (the "Motion").  The District Court granted in part and denied in part the Motion (the "Order").  The Sperring plaintiffs dismissed the Sperring Class Action with prejudice to appeal the Order.  The Appeal is pending.

26.     LuLaRoe, LLC, LLR, Inc., Lennon Leasing, LLC, Mark Stidham, and Deanne Stidham have demanded that Plaintiffs defend and indemnify them in the Sperring Class Action, including the pending appeal of the Order, and reimburse them for defense fees and costs incurred, pursuant to some or all of the Policies.

***The State of Washington  v. LLR, Inc. Lawsuit***

27.     On January 23, 2019, the Attorney General for the State of Washington filed a Complaint in Washington Superior Court for the County of King, case number 19-2-02325-2, against defendants LLR, Inc., LLR LuLaRoe Inc., Lennon Leasing, LLC, Mark Stidham, Deanne S. Brady aka Deanne Stidham, and Jordan K. Brady.  (the "State of Washington Action").  Attached as **Exhibit E** is a true and correct copy of the Complaint filed in the State of Washington Action (the "State of Washington Underlying Complaint").

28.     In the State of Washington Underlying Complaint, the Attorney General alleges that defendants' multilevel marketing company is an illegal "pyramid scheme," and that defendants have made misleading statements, including income claims, to encourage Consultants to focus more on recruitment of other Consultants and Hostesses than bona fide retail sales.  The Attorney General also alleges that defendants (1) engaged in unfair and deceptive trade practices by encouraging "inventory loading," (2) failed to disclose material terms and/or complete or accurate financial information, (3) misled Consultants about the ability to obtain inventory refunds, (4) delayed or refused to honor refund policy(ies), (5) unilaterally changed the refund policy, and (6) provided low quality merchandise to

Consultants.  The Attorney General asserts that defendants violated Washington's Anti-Pyramid Promotional Scheme Act and several provisions of the state's Consumer Protection Act.  The Attorney General seeks a permanent injunction, civil penalties, and restitution.

29.    LLR, Inc., Lennon Leasing, LLC, Mark Stidham, Deanne Stidham, and Jordan Brady have demanded that Plaintiffs defend and indemnify them in the State of Washington Action and reimburse them for defense fees and costs incurred, pursuant to some or all of the Policies.

**The Policies**

30.    Plaintiffs issued the following commercial general liability policies (collectively, the "Primary Policies") to LuLaRoe, Inc., LuLaRoe LLC, and/or LLR, Inc.:

| Policy Number | Policy Period | Named Insured(s) |
|---|---|---|
| BK0 (15) 56 40 37 39 | 11/17/2014 to 11/17/2015 | LuLaRoe, Inc. |
| BKW (16) 56 40 37 39 | 11/17/2015 to 6/15/2016 | LuLaRoe, LLC and LLR, Inc. |
| TB6-Z91-465949-026 | 6/15/2016 to 6/15/2017 | LuLaRoe, LLC and LLR, Inc. |
| TB6-Z91-465949-027 | 6/15/2017 to 6/15/2018 | LuLaRoe, LLC and LLR, Inc. |
| TB6-Z91-465949-028 | 6/15/2018 to 6/15/2019 | LuLaRoe, LLC and LLR, Inc. |

31.    Specifically, plaintiff The Ohio Casualty Insurance Company issued policy BK0 (15) 56 40 37 39 and plaintiff West American Insurance Company issued policy BKW (16) 56 40 37 39 (collectively, the "2014-16 Primary Policies"). Plaintiff The First Liberty Insurance Corporation issued policies TB6-Z91-465949-026, TB6-Z91-465949-027, and TB6-Z91-465949-028 (collectively, the "2016-19 Primary Policies").  True and correct copies of the Primary Policies are attached to this Complaint as **Exhibits F through J**.

32.     Plaintiffs also issued the following umbrella policies (collectively, the "Umbrella Policies") to defendants LuLaRoe LLC and LLR, Inc.:

| Policy Number | Policy Period | Named Insured(s) |
|---|---|---|
| USA (15) 56 40 37 39 | 3/10/2015 to 11/17/2015 | LuLaRoe, LLC |
| USA (16) 56 40 37 39 | 11/17/2015 to 6/15/2016 | LuLaRoe, LLC and LLR, Inc. |
| TH7-Z91-465949-046 | 6/15/2016 to 6/15/2017 | LuLaRoe, LLC and LLR, Inc. |
| TH7-Z91-465949-047 | 6/15/2017 to 6/15/2018 | LuLaRoe, LLC and LLR, Inc. |
| TH7-Z91-465949-048 | 6/15/2018 to 6/15/2019 | LuLaRoe, LLC and LLR, Inc. |

33.     Specifically, American Fire and Casualty Company issued policies USA (15) 56 40 37 and USA (16) 56 40 37 39 (collectively, the "2015-16 Umbrella Policies") and Liberty Insurance Corporation issued policies TH7-Z91-465949-046 and TH7-Z91-465949-047 (collectively, the "2016-18 Umbrella Policies").  Liberty Insurance Corporation also issued TH7-Z91-465949-048 (the "2018-19 Umbrella Policy").  True and correct copies of the Umbrella Policies are attached to this Complaint as **Exhibits K through O**.

34.     Each of the Primary Policies contains Commercial General Liability Coverage Form CG 00 01 0413 (the "CGL Coverage Form"), which provides, in part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.      Insuring Agreement**
>
> a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to

-10-

defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** –Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments–Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** –Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or

claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

35.     The 2014-16 Primary Policies (form CG 88 10 04 13) define "bodily injury" as follows:

**3.**     "Bodily Injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

36.     The 2016-19 Primary Policies (form LC 04 46 04 12) provide:

"Bodily injury" means:

**a.**     Bodily injury, sickness or disease sustained by a person, including death resulting from any of these   at any time; and

**b.**     Mental anguish, shock or humiliation arising out of injury as defined in Paragraph a. above. Mental anguish means any type of mental or emotional illness or distress.

37.     Under Section V – Definitions, the CGL Coverage Form, provides, in part:

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

38.   The 2016-19 Primary Policies contain form LC 29 06 08 08, which replaces the definition of "occurrence" in the CGL Coverage Form with the following definition:

"Occurrence" means:

**a.** With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

**b.** With respect to "personal and advertising injury", an offense or series of related offenses.

39.   Under Section V – Definitions, the CGL Coverage Form provides, in part:

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it: or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**21.** "Your product"

**a.** Means:

        **(1)**     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

               **(a)**    You;

               **(b)**    Others trading under your name; or

               **(c)**    A person or organization whose business or assets you have acquired; and

        **(2)**     containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes:

        **(1)**     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)**     The providing of or failure to provide warnings or instructions.

    **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

40.    Under part 2 Exclusions of Section I, Coverage A of the CGL Coverage Form, the Primary Policies contain various exclusions, including, without limitation, Exclusion 2.b. (the "Contractual Liability Exclusion"), Exclusion 2.k. (the "Damage to Your Product Exclusion"), and Exclusion 2.m. (the "Damage to Property Not Physically Injured Exclusion"). As amended by the noted endorsements, the CGL Coverage Form states, in part:

2.      **Exclusions**

This insurance does not apply to:

* * *

a.      **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.2

b.      **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement; or

**(2)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. . . .

* * *

---

2 As amended by form CG 88 10 04 13 in the 2014-16 Primary Policies and form LC 04 46 04 12 in the 2016-19 Primary Policies.

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

* * *

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically   injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" it has been put to its intended use.

41.    The CGL Coverage Form also provides, in part:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking

-16-

those damages. However, we will have no duty to
defend the insured against any "suit" seeking
damages for "personal and advertising injury" to
which this insurance does not apply. . .No other
obligation or liability to pay sums or perform acts or
services is covered unless explicitly provided for
under Supplementary Payments –

42.     Under SECTION V – DEFINITIONS, as amended by form CG 90 41
01 013, the 2014-16 Primary Policies provide:

14.     "Personal and advertising injury" means injury, including
consequential "bodily injury", arising out of one or more of the
following offenses:

    **a.**     False arrest, detention or imprisonment;

    **b.**     Malicious prosecution;

    **c.**     The wrongful eviction from, wrongful entry into, or
invasion of the right of private occupancy of a
room, dwelling or premises       that a person
occupies, committed by or on behalf of its owner,
landlord or lessor;

    **d.**     Oral or written publication, in any manner, of any
material that slanders or libels a person or
organization or disparages a person's or
organization's goods, products or services;

    **e.**     Oral or written publication, in any manner, of
material that violates a person's right of privacy;

    **f.**     The use of another's advertising idea in your
"advertisement"' or;

g.    Infringing upon another's copyright or slogan in your "advertisement".[3]

43.    Under SECTION V – DEFINITIONS, as amended by form LC 29 04 08 08, the 2016-19 Primary Policies provide:

14.    "Personal and advertising injury" means injury,      including consequential "bodily injury", arising out of one or more of the following offenses:

a.    False arrest, detention or imprisonment;

b.    Malicious prosecution;

c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises      that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.    Oral or written "publication" directly to the public at large of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or      services.

e.    (1) Oral or written "publication" of material that violates a person's right of privacy;

(2) Oral or written "publication" of material that violates a person's right of privacy by misappropriation of that person's name or likeness.

f.    The use of another's advertising idea in your "advertisement'" or;

_____

[3] As amended by Amendment of Coverage B Personal and Advertising Injury Liability form CG 90 41 01 13.

g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement".

44.      Under part 2 Exclusions of Section I, Coverage B of the CGL Coverage Form, the Primary Policies contain various exclusions, including Exclusion 2.a. (the "Knowing Violation Of Rights Of Another Exclusion"), Exclusion 2.d. (the "Criminal Acts Exclusion"), Exclusion 2.e. (the "Contractual Liability Exclusion"), Exclusion 2.f. (the "Breach of Contract Exclusion"), and Exclusion 2.g. (the "Quality Or Performance Of Goods – Failure To Conform To Statements Exclusion"), which state:

2.      **Exclusions**

This insurance does not apply to:

a.      **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

* * *

d.      **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e.      **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement, This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f.   **Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, we except an implied contract to use another's advertising idea in your "advertisement".[4]

g.   **Quality Or Performance Of Goods – Failure To Conform To Statements.**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in you "advertisement".

45.   The 2015-16 Umbrella Policies include Commercial Umbrella Coverage Form CU 60 02 06 97, which, as amended by General Amendatory Endorsement (Trade Dress Limitation) form CU 89 24 07 14 (the "GAE"), provides, in part:

I.   **COVERAGE**

A.   We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. . . .

B.   This insurance applies to:

---

[4] "Advertisement" is defined in Amendment of Coverage B Personal and Advertising Injury Liability Endorsement form CG 90 41 01 13.

-20-

COMPLAINT

**1.** "Bodily injury" or "property damage" only if:

  **a.** The "bodily injury" or "property damage" occurs during the Policy Period; and

  **b.** The "bodily injury" or "property damage" is caused by an "occurrence"

  . . .

46. The 2015-16 Umbrella Policies contain the same, or nearly the same, definitions of "occurrence," "property damage," and "personal and advertising injury" as the underlying 2014-16 Primary Policies.[5]  The 2015-16 Umbrella Policies provide:

  **C.** "Bodily Injury" means physical injury, sickness or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from  physical injury, sickness or disease to that person. "Bodily injury" does not include "bodily injury" arising out of "personal and advertising injury".[6]

47. The 2016-18 Umbrella Policies include Commercial Liability – Umbrella Coverage Form LCU 00 01 11 10, which provides, in part:

**SECTION I - COVERAGES**

**1.** **Insuring Agreement**

  **a.** We will pay those sums in excess of the "retained limit" that the insured becomes  legally obligated to pay as damages because  of:

---

[5] See form CU 89 24 07 14. The 2014-16 Umbrella Policies add a final sentence to the definition of "personal and advertising injury" as follows: "'Personal and advertising injury' includes 'consequential bodily injury'."

[6] As amended by form CU 89 24 07 14.

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Personal and advertising injury"; to which this insurance applies. . . .

   \* \* \*

**c.**   This insurance applies only if:

    **(1)**   The "bodily injury" or "property damage" occurs during the policy  period and the "personal and advertising injury" is caused by an offense arising out of your business during the policy period;

    **(2)**   The "bodily injury" or "property damage" or "personal and advertising injury" is caused by an "occurrence" . . .

48.   The 2018-19 Umbrella Policy includes Umbrella Coverage Form LCU 00 01 01 18, which states, in part:

**SECTION I - COVERAGES**

**1.**   We will pay on behalf of the insured those sums in excess of the **retained limit** that the insured becomes legally obligated to pay as damages because of **bodily injury**, property damage or **personal and advertising injury** to which this        insurance applies. . . .

**2.**   With respect to **bodily injury**, **property damage** or **personal and advertising injury**, this insurance applies only if:

**a.**   The **bodily injury** or **property damage** occurs during the policy period, or the **personal and advertising injury** is caused by an offense arising

out of your business but only if the offense was committed during the **policy period**.

> **b.** The **bodily injury**, **property damage** or **personal and advertising injury** is caused by an **occurrence** . . .

49.    The 2016-18 Umbrella Policies and the 2018-19 Umbrella Policy utilize the same or nearly the same definitions of "bodily injury,"[7] "property damage," "occurrence," and "personal and advertising injury"[8] as the underlying 2016-19 Primary Policies.

50.    The Umbrella Policies also contain exclusions or limitations applicable to "bodily injury" and property damage" analogous to the Expected and Intended Injury Exclusion,[9] the Contractual Liability Exclusion,[10] the Damage to Your Product Exclusion, [11] and the Damage to Property Not Physically Injured Exclusion.[12]  The 2016-18 Umbrella Policies also exclude coverage for "property damage" to "property in the care, custody or control of the insured," and the 2018-19 Umbrella Policy contains Exclusion 6.d. for "property damage" to "Personal

---

[7] The 2016-19 Umbrella Policies add the following final sentence to the definition of "bodily injury": "'Bodily injury' does not include injury that falls within the definition of "personal and advertising injury."

[8] The 2016-19 Umbrella Policies add "in any manner" after "publication directly to the public at large" in subparts d. and e.

[9] See Exclusion IV. A. in the 2015-16 Umbrella Policies, Exclusion 2.a. in the 2016-18 Umbrella Policies, and Exclusion V.14. in the 2018-19 Umbrella Policy.

[10] See CU 89 24 07 14 in the 2015-16 Umbrella Policies, Exclusion 2.b. in the 2016-18 Umbrella Policies, and Exclusion V.4. in the 2018-19 Umbrella Policy.

[11] See Exclusion IV. F. in the 2015-16 Umbrella Policies, Exclusion 2.m. in the 2016-18 Umbrella Policies, and Exclusion V.7. in the 2018-19 Umbrella Policy.

[12] See Exclusion IV. E. in the 2015-16 Umbrella Policies, Exclusion 2.o. in the 2016-18 Umbrella Policies, and Exclusion V.5. in the 2018-19 Umbrella Policy.

property in the care, custody or control of the insured" (the "Care, Custody and Control Exclusion").

51.     The Umbrella Policies also contain exclusions applicable to "personal and advertising injury," including, but not limited to, Exclusion J in Commercial Umbrella Coverage Form CU 60 02 06 97, as amended by the GAE (CU 89 24 07 14) in the 2015-16 Umbrella Policies, Exclusion b. in Commercial Liability – Umbrella Coverage Form LCU 00 01 11 10 in the 2016-18 Umbrella Policies, and Exclusion 18 in Commercial Liability – Umbrella Coverage Form LCU 00 01 01 18 in the 2018-19 Umbrella Policy.

**FIRST CLAIM FOR RELIEF FOR DECLARATORY JUDGMENT**

**(Against All Defendants:  No Duty to Defend and/or Indemnify under the Primary Policies)**

52.     Plaintiffs re-alleges and incorporates by reference paragraphs 1 through 51 of this Complaint as though fully set forth herein.

53.     An actual controversy exists between Plaintiffs and Defendants regarding Plaintiffs' obligations, if any, to defend and/or indemnify Defendants under the Primary Policies in the Lemberg Class Action, the Providence Action, the Hibbard Action, the Sperring Class Action, and the State of Washington Action, and all related arbitrations, appeals, and proceedings (collectively, the "Underlying Actions").

54.     Defendants contend that the Primary Policies obligate The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation to defend and/or indemnify Defendants against the claims in the Underlying Actions.  The Ohio Casualty Insurance Company, West American Insurance Company and The First Liberty Insurance Corporation dispute this and contend that they have no duty to defend or indemnify Defendants against any of the claims.

55.     The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation contend that the Underlying Actions do not contain any allegations of "bodily injury," "property damage," and/or "personal and advertising injury," as those terms are defined in the Primary Policies.  Also, subject to their terms, conditions, and exclusions, the Primary Policies only cover an insured's liability for damages because of "bodily injury" or "property damage" caused by an "occurrence," meaning "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation contend that there are no allegations of "bodily injury" or "property damage" caused by accident.  To the contrary, the plaintiffs in the Underlying Actions allege deliberate business decisions and conduct by Defendants.

56.     The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation further contend that the Primary Policies contain exclusions and limitations, including, without limitation, those referenced above, that conclusively eliminate any potential of covered damages.  For example, and without limitation, each of the Primary Policies contain exclusions for Damage to Your Product and Property Not Physically Injured.  Thus, to the extent, if any, restitution to Consultants for Defendants' delivery of defective product and/or Consultants' inability to return or use Inventory, constitutes "property damage," the exclusions for Damage to Your Product and Property Not Physically Injured Exclusion would apply to completely eliminate any potential of covered damages.

57.     The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation are entitled to a judicial determination of their rights and duties (if any) under the Primary Policies, pursuant to 28 U.S.C. section 2201, which provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

58.     The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation have no plain, speedy, or adequate remedy at law to resolve the controversy between them and Defendants.

59.     The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation seek a judicial determination and declaration by this Court, pursuant to 28 U.S.C. section 2201, as follows:

a.      Under the Primary Policies, The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation have no duty to defend Defendants, or to pay any portion of their defense costs, in the Underlying Actions; and

b.      Under the Primary Policies, The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation have no duty to indemnify Defendants against any claims asserted in the Underlying Actions.

## SECOND CLAIM FOR RELIEF FOR DECLARATORY JUDGMENT

### (Against All Defendants:  No Duty to Defend and/or Indemnify under the Umbrella Policies)

60.     Plaintiffs re-alleges and incorporate by reference paragraphs 1 through 59 of this Complaint as though fully set forth herein.

61.     An actual controversy exists between Plaintiffs and Defendants, regarding Plaintiffs' obligations, if any, to defend and/or indemnify Defendants under the Umbrella Policies in the Underlying Actions.

62.     Defendants contend that the Umbrella Policies obligate American Fire and Casualty Company and Liberty Insurance Corporation to defend and/or indemnify Defendants against the claims in the Underlying Actions.  American Fire and Casualty Company and Liberty Insurance Corporation dispute this and contend that they have no duty to defend or indemnify Defendants against any of the claims.

63.     American Fire and Casualty Company and Liberty Insurance Corporation contend that the Underlying Actions do not contain any allegations of "bodily injury," "property damage," and/or "personal and advertising injury," as those terms are defined in the Umbrella Policies.  Also, subject to their terms, condition,s and exclusions, the Umbrella Policies only cover an insured's liability for damages because of "bodily injury" or "property damage" caused by an "occurrence," meaning "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  American Fire and Casualty Company and Liberty Insurance Corporation contend that there are no allegations of "bodily injury" or "property damage" caused by accident.  To the contrary, the plaintiffs in the Underlying Actions allege deliberate business decisions and conduct by Defendants.

64.     American Fire and Casualty Company and Liberty Insurance Corporation further contend that the Umbrella Policies contain exclusions and limitations, including, without limitation, those referenced above, that conclusively eliminate any potential of covered damages.  For example, and without limitation, each of the Umbrella Policies contain exclusions for Damage to Your Product and Property Not Physically Injured.  Thus, to the extent, if any, restitution for Consultants for Defendants' delivery of defective product and/or Consultants' inability to return or use Inventory constitutes "property damage," the exclusions for

Damage to Your Product and Property Not Physically Injured Exclusion would apply to completely eliminate any potential of covered damages.

65.     American Fire and Casualty Company and Liberty Insurance Corporation are entitled to a judicial determination of their rights and duties under the Umbrella Policies, pursuant to 28 U.S.C. section 2201, which provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

66.     American Fire and Casualty Company and Liberty Insurance Corporation have no plain, speedy, or adequate remedy at law to resolve the controversy between them and Defendants.

67.     American Fire and Casualty Company and Liberty Insurance Corporation seek a judicial determination and declaration by this Court, pursuant to 28 U.S.C. section 2201, as follows:

a.     Under the Umbrella Policies, American Fire and Casualty Company and Liberty Insurance Corporation have no duty to defend Defendants, or to pay any portion of their defense costs, in the Underlying Actions; and

b.     Under the Umbrella Policies, American Fire and Casualty Company and Liberty Insurance Corporation have no duty to indemnify Defendants against any claims asserted in the Underlying Actions.

# **PRAYER FOR RELIEF**

**As to the First Claim for Relief:**

1.     For a declaration that, pursuant to the Primary Policies and the exclusions contained therein, that The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation had, and have, no duty to defend Defendants, or pay any portion of their defense costs, in the Underlying Actions;

2.     For a declaration that, pursuant to the Primary Policies and the exclusions contained therein, that The Ohio Casualty Insurance Company, West American Insurance Company, and The First Liberty Insurance Corporation had, and have, no duty to indemnify Defendants against any claims asserted in the Underlying Actions, *i.e.*, no duty to pay any potential damages or judgments that might be awarded or entered against Defendants in the Underlying Actions;

3.     For costs of suit herein; and

4.     For such other and further relief as the Court deems just and proper.

**As to the Second Claim for Relief:**

1.     For a declaration that, pursuant to the Umbrella Policies and the exclusions contained therein, that American Fire and Casualty Company and Liberty Insurance Corporation had and have no duty to defend Defendants, or pay any portion of their defense costs, in the Underlying Actions;

2.     For a declaration that, pursuant to the Umbrella Policies and the exclusions contained therein, that American Fire and Casualty Company and Liberty Insurance Corporation had, and have, no duty to indemnify Defendants against any claims asserted in the Underlying Actions, *i.e.*, no duty to pay any potential damages or judgments that might be awarded or entered against Defendants in the Underlying Actions;

3.     For costs of suit herein; and

4.     For such other and further relief as the Court deems just and proper.

Dated:  October 2, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
                    */s/ Scott Sveslosky*
SCOTT SVESLOSKY
Attorneys for Plaintiffs
THE OHIO CASUALTY INSURANCE
COMPANY, WEST AMERICAN
INSURANCE COMPANY, THE FIRST
LIBERTY INSURANCE CORPORATION,
AMERICAN FIRE AND CASUALTY
COMPANY, and LIBERTY INSURANCE
CORPORATION